UNITED STATES, Appellee

v

EDMUND A. SOLAK, Technical Sergeant, U. S. Air Force, Appellant

12 USCMA 440, 28 CMR 6

No. 12,479

Decided May 29, 1959

*John A. Delatore, Esquire, Lieutenant Colonel Sam F. Carter,* and *Captain John H. Leonard* were on the brief for Appellant, Accused.

*Lieutenant Colonel Robert W. Michels* and *Captain John W. Fahrney* were on the brief for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

We granted the accused's petition for grant of review in this case to determine the extent of an obvious deficiency in the record of trial, and its effect, if any, upon the substantial rights of the accused.

The record discloses that after the court-martial had deliberated upon its findings for more than three hours, the court was reopened. The transcript of the ensuing proceedings is as follows:

"LO: Have you reached a finding?

"PRES: We have not reached a finding as of this time. We request adjournment until tomorrow morning.

"LO: Let's take a five minute recess.

"The court recessed at 1636 hours, 17 February 1958.

"The court opened at 1645 hours, 17 February 1958.

"PRES: The court will come to order.

"TC: Let the record reflect that all parties to the trial who were present when the court recessed are again present in court.

"LO: Are you ready to proceed now?

"PRES: Yes, we are.

"LO: The court will be closed.

"(Law officer and reporter remained in courtroom with court members).

"The court closed at 1646 hours, 17 February 1958.

"LO: Have you reached a finding, sir?

"PRES: Yes, we have. As president of the court, I request legal aid in constructing the sentence.

"LO: All right. How did you find the accused as to Specification 12 of Charge I?

"PRES: Specification 12 of Charge I: Guilty.

"LO: How did you find the accused as to Specification 13 of Charge I?

"PRES: Specification 13 of Charge I: Guilty.

"LO: How did you find the accused of Specification 14, Charge I?

"PRES: Specification 14, Charge I: Guilty.

"LO: How did you find the accused as to Specification 15 of Charge I?

"PRES: Specification 15 of Charge I: Not Guilty.

"LO: How did you find the accused of Specification 16 of Charge I?

"PRES: Specification 16 of

442

Charge I: Guilty.

"LO: How did you find the accused as to Specification 17 of Charge I?

"PRES: Specification 17 of Charge I: Guilty.

"LO: How did you find the accused as to Specification 18 of Charge I?

"PRES: Specification 18 of Charge I: Guilty, with the exception that the three hundred and forty-one should read One Hundred Dollars. And of Charge I: Guilty.

"LO: How did you find the accused as to Specification 2 of Charge II?

"PRES: Charge II, Specification 2: Guilty.

"LO: How did you find the accused as to Specification 3 of Charge II?

"PRES: Specification 3, Charge II: Guilty.

"LO: How did you find the accused of Specification 4 of Charge II?

"PRES: Specification 4, Charge II: Guilty.

"LO: How did you find the accused of Specification 5 of Charge II?

"PRES: Specification 5, Charge II: Guilty.

"LO: How did you find the accused of Specification 6 of Charge II?

"PRES: Specification 6 of Charge II: Guilty.

"LO: How did you find the accused of Specification 7 of Charge II?

"PRES: Specification 7, Charge II: Guilty.

"LO: How did you find the accused of Specification 8 of Charge II?

"PRES: Specification 8 of Charge II: Guilty.

"LO: How did you find the accused of Specification 9 of Charge II?

"PRES: Specification 9, Charge II: Guilty.

"LO: As I see it then as to all of the—as to Specifications 12 through 18 of Charge I: Guilty, of all except Specification 15, and substitut-ing One Hundred Dollars—Guilty, except you substituted One Hundred Dollars for the Three Hundred and Forty-One Dollars of Specification 18.

"PRES: Correct.

"LO: That is correct? And on Charge II, Guilty as to all Specifications and the Charge?

"PRES: That is correct.

"LO: All the Specifications of Charge II. That was the vote in everything? At least two-thirds of the members of the court.

"PRES: Two-thirds of the members concurring on secret written ballot."

Thereafter, the law officer prepared a form which he advised the president to follow in his announcement of the findings.

The foregoing portion of the record affirmatively shows that the court had ■■■■■■■■■ not reached its findings ■■■■■■■■■ when the recess was declared. The announcement of the president *must* be accepted for "the records . . . of the trial court import absolute verity and may not, in the absence of a charge of fraud, be challenged." United States v Galloway, 2 USCMA 433, 9 CMR 63. Of course, such a recess, by its very nature, suspends the activities of the tribunal, including balloting upon the findings. Black's Law Dictionary, 4th ed, page 1434. When the recess was terminated and the court reopened there should have been no change in the status of the case. However, when the court entered upon a closed session ostensibly to continue its deliberations immediately following the recess, the law officer and the reporter remained with the members. In this particular, Article 39, Uniform Code of Military Justice, 10 USC § 839, provides:

"*When a general or special court-martial deliberates or votes, only the members of the court may be present.* After a general court-martial has finally voted on the findings, the court may request the law officer and the reporter to appear before the court to put the findings in proper form, and those proceedings shall be

443

on the record." [Emphasis supplied.]

Since the law officer and reporter were present in the closed session, and the president announced that the court had reached its findings, it must be concluded that: (1) the court arrived at its findings while proceedings were in recess, and (2) the law officer was so advised.

The effect of conducting official deliberations in the informal atmosphere of a recess need not now delay us. Suffice it to say that few, if any, convictions so arrived at could be sustained. Of paramount importance here is the communication between the court and the law officer in which he was advised that the court had arrived at its findings. Such advice must have been imparted for otherwise neither he nor the reporter could have remained in the closed session. Article 39, supra. Yet, there is no verbatim report of this communication in the record despite the requirement that all court-martial proceedings "shall be made a part of the record and shall be in the presence of the accused, the defense counsel, the trial counsel, and in general court-martial cases, the law officer." Article 39, supra. This unauthorized communication gives rise to a presumption of prejudice, which can be overcome only by a clear and positive showing that it did not and could not operate in any way to influence the decision. Mattox v United States, 146 US 140, 13 S Ct 50, 36 L ed 917; United States v Adamiak, 4 USCMA 412, 15 CMR 412; United States v Lowry, 4 USCMA 448, 16 CMR 22.

Subsequent to the issuance of the order granting review, the Government sought to fill in the interstices by submitting affidavits of the reporter, trial counsel, law officer, president, and one court member. This is a permissible, but usually unsatisfactory, alternative to a certificate of correction. United States v Walters, 4 USCMA 617, 16 CMR 191; United States v Roberts, 7 USCMA 322, 22 CMR 112. The use of this method of completing the record may be resorted to only when the affidavits are in such substantial accord that they may be equated to "amending the record with the consent of the parties." United States v Walters, supra.

These affidavits do not satisfy that requirement for there is no indication the defense concedes the existence of the facts to which they pertain.

But, more important is the consideration dictated by the opinions of this Court in United States v Whitman, 3 USCMA 179, 11 CMR 179, and United States v Nelson, 3 USCMA 482, 13 CMR 38. In each of the cited cases, this Court adverted to the requirement of verbatim records of trial. In *Whitman* we reversed the findings and sentence holding that a record of trial verbatim in part and narrative in part will not support the imposition of a punitive discharge by a special court-martial. In the *Nelson* case this holding was affirmed but it was modified in its application. There, the Court declared:

"It is not reasonably possible to set out the factors which can, in all instances, be used to test whether a record, which has some slight omissions, prejudiced an accused's right on appeal. Generally speaking, if the record is sufficiently complete to permit reviewing agencies to determine with reasonable certainty the substance and sense of the question, answer, or argument, then prejudice is not present. For instance, if the content of an answer by a witness is clearly discernible from the portions of the testimony transcribed, any appellate court can determine its substance regardless of a word or phrase being omitted. When the omissions are so unimportant that the thought being expressed is readily ascertainable, then the record can be said to be verbatim. Furthermore, the purpose of an appeal is to obtain a decision of the appellate tribunal on error claimed to have been committed in the forums below. If the transcript is sufficiently complete to present all material evidence bearing on

444

all issues, minimal standards have been met and we will not reverse."

The facts recited by the authenticated record of trial in this case—a record unchallenged by any allegation of fraud—require the inference that an off-the-record conference occurred between the law officer and the court members. This conference took place after the court declared its intention of adjourning overnight—a prerogative of the president.[1] Rather than accede to this request, the law officer declared a recess. In these circumstances, the conclusion that he declared a recess for conferring with the president is compelled. By so acting, he disclosed an utter disregard of the caveat announced by the late Judge Brosman in United States v Walters, supra, page 630:

". . . Although there be no express rule in the Manual—or elsewhere in the traditional sources of military law—dealing with conduct during a recess, a law officer must exercise sound discretion in the avoidance of behavior at such times inconsistent with the proper and dignified operation of courts-martial, or with general confidence in their integrity."

Moreover, the circumstances existing at the time the recess was declared shed light on the only possible subjects of such a conference. The hour was growing late. The court had been deliberating over three hours. Although a verdict had not been reached when the recess was declared, all was in readiness after its termination. From these circumstances a very serious question of whether or not the court-martial was coerced into concluding its deliberations and announcing its findings arises. United States v Pleva, 66 F 2d 529 (CA 2d Cir)(1933). Considering the serious burden resting upon the Government as a result of the disclosure of an unauthorized communication—particularly one of this sort—that burden can be sustained *only* by a verbatim record of the communication. United States v Whitman, supra.

We are informed by the Government that trial defense counsel's failure to challenge the propriety of █ the proceedings herein described operates as a waiver preventing further consideration of the errors at this level. But, the circumstances of this case are completely unlike those in which this Court has invoked the theory of waiver. In United States v Walters, supra, the defense counsel participated in the out-of-court conference. Here there is no showing that if he was aware of the fact such a conference was held, he knew the substance thereof. Neither are the circumstances akin to those found in United States v Ferry, 2 USCMA 326, 8 CMR 126. There, the law officer participated in a discussion with the court members during the course of deliberations upon the sentence. Later, he made a full disclosure of the question put to him in the closed conference and of the answer he made. At this, the defense counsel stated he believed the rights of the accused were fully protected and he interposed no objection. This Court held that the subsequent action of the law officer cured any error in his earlier improper participation in the closed conference. In the instant case, however, there was no such disclosure, and no opportunity was afforded the accused or his counsel to object to the proceedings. Hence, the doctrine of waiver is inapplicable.

---

[1] Paragraphs 40*b* (1) and 40*b* (1) (*d*) of the Manual for Courts-Martial, United States, 1951, provide as follows:

"(1) *General court-martial.*—the president of a general court-martial has the duties, powers, and privileges of members in general. He has the following additional powers and duties:

. . . . .

"(d) For good reason, he may recess or adjourn the court (e.g., 39*d*), subject to the right of the law officer to rule finally upon a motion or request of counsel that certain proceedings be completed prior to such recess or adjournment, or that a continuance be granted (58). Whether a matter of recess or adjournment has become an interlocutory question will be finally determined by the law officer (57*d*)."

The decision of the board of review is reversed. A rehearing may be ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

In the case at bar, I find no basis for concluding the court-martial reached its findings during a recess in proceedings. Neither do I believe any fair inference can be made that the court was coerced into terminating its deliberations and announcing its findings. Common sense would dictate that the first of those alternatives was not possible for the obvious reason that the recess was for only nine minutes and, immediately after reconvening, the court announced findings on fifteen separate specifications involving extensive facts. One finding was not guilty, and one included exceptions and substitutions. To me its seems fantastic to say that a court-martial could proceed that speedily, particularly when it had deliberated some three and one-half hours prior to the recess. The second alternative is likewise contrary to good judgment because, had the court not concluded its findings prior to the recess, it would not have immediately gone into secret session with the law officer to put its findings in order. Had it been coerced into deliberating, some time would have been consumed in discussions. Accordingly, I disagree with my associates and point out why, under our previously decided cases, we should affirm the decision of the board of review.

While the record reflects that the president of the court first stated, "We have not reached a finding ▇▇▇▇▇▇ ▇ as of this time," this was at 4:36 p.m. and the proceedings after the court reopened leave no doubt that the court-martial had reached its findings but preferred to await the morning before consulting with the law officer to put them into proper form. Giving verity to the entire record, then, rather than just to isolated portions thereof, and taking into consideration the task which confronted the court members, it would

appear that at the time of the request for adjournment the court members had decided the question of accused's guilt or innocence but, for reasons best known to themselves, were not ready to announce their findings at that time. There can be many legitimate reasons why, after agreeing upon findings, the members would elect not to call in the law officer for finalization and, if there is any deficiency in the record, it amounts to no more than a failure to show why the request for adjournment was abandoned and the trial continued. In that connection, I point out that fixing the time schedule of a court does not touch on the merits of the controversy but, in view of this peculiar situation, I am prepared to assume that any conversation between the law officer and the court during the recess should have been recorded. However, that is a deficiency which can be corrected, and the affidavits which are usable for that purpose dispel any presumption of prejudice, for they clearly show the conversation did not operate in any way to influence the court's decision.

My associates, however, do not accept the unrebutted and uncontested affidavits and on some ▇▇▇▇▇▇ ▇ ground unclear to me read into the record reversible error. While I have always subscribed to the position that the proper use of affidavits on appeal is narrow, I point out that in this instance my colleagues acknowledge affidavits may properly be used for our purpose. However, they chose to reject them for the reason that "there is no indication that the defense concedes the existence of the facts to which they pertain." I have never known such a test to be the rule, and I have always believed that, in a situation such as this, to place a fact in dispute, counter-affidavits are necessary. It is indeed a unique principle which precludes a court from considering undisputed facts which are properly before it merely because the other party does not affirmatively concede their trustworthiness. The averments in the sworn statements are in substantial accord, and the defense does not contest a single fact therein recited. It ought to be obvious why accused does

not oppose that which he cannot deny and, as a matter of fact, the defense contention before this Court is predicated upon the claim that the communication described in the statements took place. To do that is, in and of itself, a concession of the existence of the facts.

Moreover, another matter bears discussion. Something is said in the Court's opinion about the ▇▇▇▇ ▇ law officer disregarding a caveat by holding an unlawful communication with the court. This is not a case of a law officer participating in secret deliberations of the court. In this situation, he performed his duty in accordance with the law. A law officer certainly does not step out of character when he discusses with the president such matters as the time of trial, recesses, adjournments, or continuances. Paragraph 40 of the Manual for Courts-Martial, United States, 1951, quoted in part by my associates, in speaking about the duties of the president, provides insofar as relevant:

"After consultation with the trial counsel and, when appropriate, the law officer (58*b*), he sets the time and place of trial and prescribes the uniform to be worn.

. . . . .

"For good reason, he may recess or adjourn the court (e.g., 39*d*), subject to the right of the law officer to rule finally upon a motion or request of counsel that certain proceedings be completed prior to such recess or adjournment, or that a continuance be granted (58). Whether a matter of recess or adjournment has become an interlocutory question will be finally determined by the law officer (57*d*)."

It is to be noted that, in connection with a recess or adjournment, the final decision on whether an interlocutory question is involved is to be decided by the law officer. In light of those provisions, it would indeed be a sorry situation to conclude that communications between the president and law officer are unlawful. Moreover, paragraph 82 of the Manual for Courts-Martial, which deals with matters to be recorded, does not require that consultations and communications on those matters be reflected in the record unless they occur in open court. It does, however, provide that closed conferences between the law officer and the court on the form of findings be recorded. Accordingly, this record does not *ipso facto* condemn the law officer.

As my brothers correctly note in the majority opinion, the presumption of prejudice may be overcome, and, at this level, by the method herein employed. It is, therefore, difficult for me to understand why this conviction is reversed when the unrebutted affidavits negate any possible prejudice to the accused. They show that the law officer did not participate in any way in the deliberation or findings; that the court members were not coerced; that the findings had already been decided by the court-martial before the recess, in closed session and upon secret ballot; that the discussion during recess was merely for the purpose of determining whether the court-martial could continue after the dinner hour; and that in the course of the discussion, when it came to the law officer's attention that the court had a mistaken understanding as to procedure and that all that remained was to put the findings in proper form and to continue with matters pertaining to sentence, he suggested the court complete its task. Thus, it is clear beyond peradventure that accused was not prejudiced.

I would affirm the decision of the board of review.