UNITED STATES, Appellant

v

DAN S. STRAHAN, Private, U. S. Army, Appellee

14 USCMA 41, 33 CMR 253

No. 16,425

May 17, 1963

 ██ 

*Captain Joseph M. Livermore* argued the cause for Appellant, United States. With him on the brief was *Lieutenant Colonel Francis M. Cooper.*

*Vincent P. McCauley, Esquire,* and *Captain Ronald L. Gainer* argued the cause for Appellee, Accused. With them on the brief were *Lieutenant Colonel Ralph Herrod* and *Captain David M. Gill.*

## Opinion of the Court

KILDAY, Judge:

The instant case poses one more problem presented in what has previously been characterized as the "battle of affidavits."

Tried by general court-martial at Fort Benning, Georgia, accused pleaded not guilty but was convicted of indecent assault on a nineteen-year-old WAC private, violative of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to bad-conduct discharge, total forfeitures, and confinement at hard labor for one year. The convening authority approved but, subsequently, for reasons which shall be recounted hereinafter, a board of review set aside the findings and sentence and ordered a rehearing. Pursuant to Article 67(b)(2) of the Code, 10 USC § 867, The Judge Advocate General of the Army has certified the record to this Court for review.

He requests action by this Court on three issues. The same will be set forth subsequently herein. To place the problem which here confronts us in perspective, however, it is desirable that the facts be related in some detail.

The circumstances of the alleged offense are not important to the issues before us. It is sufficient to note that accused took the witness stand and candidly admitted the act, but asserted implied consent by the purported victim. Thus, credibility was a most significant factor at trial.

In that connection, after accused had testified, the defense presented a lieutenant and two sergeants with whom accused had previously served in Korea. They testified as to his character, including trustworthiness and truthfulness. In rebuttal, trial counsel produced another sergeant and a captain who was accused's company commander at Fort Benning. The captain testified that accused's reputation for character was "Exceptionally poor." Further, the commanding officer emphatically impugned accused's veracity.

After the trial, accused's individual civilian defense counsel was apprised by two soldiers he had standing by for pos-

**42**

sible character testimony, that the captain—who was, incidentally, also their company commander—had remained in the immediate vicinity after he testified. When the court-martial took a recess—apparently while the law officer held a closed session as to his proposed instructions on the merits—these two soldiers observed their commanding officer go up to one of the court members and engage in conversation. During the course thereof, they claimed to have heard the member comment to their commander, in a complimentary tone, "Good show." Occurring, as it allegedly did, in the corridor outside the courtroom and without the knowledge of counsel, the accused, the law officer, or the reporter, this incident is not, of course, reflected in the record of trial. Both men, however, reduced the substance of the above incident to affidavits which they executed under oath two days after trial and submitted to accused's lawyer.

In the meanwhile, the record of trial was transcribed and forwarded to the convening authority thirteen days subsequent to trial. In ten days, the staff judge advocate submitted his post-trial review to the convening authority. Five days later—exactly four weeks after trial—the convening authority acted and the general court-martial order was promulgated, approving the proceedings and forwarding the record for review by a board of review.

The next day was a Thursday, on which date accused signed a request that The Judge Advocate General appoint appellate counsel to represent him before the board of review. On the following Monday, accused acknowledged receipt of his copy of the record of trial. That same day, at 9:00 a.m., military authorities were first apprised of the existence of the alleged conversation between accused's commanding officer and the court member when the earlier-mentioned affidavits were received in the office of the staff judge advocate from accused's trial defense counsel in what the latter styled an "Addition to Record of Incident of Trial."

These two affidavits were, of course, received by the board of review with the record. Based thereon was the contention by appellate defense counsel that the findings and sentence must be set aside because of an unrecorded and unauthorized communication between a witness and the court-martial, not known to the defense until after trial.

In response, the Government submitted, among others, an affidavit it had procured from the court member, and another from accused's company commander who testified against him in rebuttal. These affidavits were obtained while the case was pending before the board of review. Both men agree they conversed, but their version as to the substance thereof is poles apart from that set forth in the defense affidavits. As they explain the conversation, it was one at a chance meeting between two old friends who had not seen one another for some five years. It consisted of ordinary small talk, "the usual greetings," and "inquiries as to health of our families." Additionally, these affidavits reflect the company commander jocularly apprised the member that accused had come to his organization "thanks to you," as a result of transfer from the member's unit. The member evinced surprise, and stated he should disclose his connection with accused in open court.[1] The company commander averred that the reconvening of the court-martial terminated the conversation at that point. And the court member, with specific reference to the alleged statement "good show," expressly

---

[1] The record reflects that, after a recess, the member did indeed make this disclosure upon reconvening of the court-martial. He stated the knowledge had come to his attention during the recess, but that he did not know accused and had not formed any opinion in the case. The defense had no objection to his continued service on the court-martial.

It is to be noted that, although the member avers his conversation with the witness was after the latter's testimony, the transcript fixes the time of this disclosure by the member at mid-morning, whereas the conversation recounted in the defense affidavits allegedly took place subsequent to the company commander's testimony, which was later in the trial during the afternoon session.

denied any recollection of making such comment or any statement to that effect.

The board of review noted that the affidavits of both parties showed a conversation did occur between the prosecution witness and the court member. Citing United States v Adamiak, 4 USCMA 412, 15 CMR 412, the board concluded this out-of-court communication raised a presumption of prejudice. However, since appellate defense counsel would not concede the facts related in the Government's affidavits, the board of review opined it was without authority to consider them on the merits. See United States v Solak, 10 USCMA 440, 28 CMR 6. Thus, the board held the presumption of prejudice was unrebutted, which compelled that the findings and sentence be set aside and a rehearing ordered.

It is that decision by the board which led to The Judge Advocate General's certificate for review on the following issues:

WAS THE BOARD OF REVIEW CORRECT IN CONSIDERING THE DEFENSE AFFIDAVITS ON THEIR MERITS?

WAS THE BOARD OF REVIEW CORRECT IN REFUSING TO CONSIDER ON THEIR MERITS THE AFFIDAVITS SUBMITTED BY THE GOVERNMENT IN REBUTTAL TO THE DEFENSE AFFIDAVITS?

WAS THE BOARD OF REVIEW CORRECT IN DISPOSING OF THE CASE BY ORDERING A REHEARING?

I

As to the first certified question, the answer must be in the affirmative. Unauthorized communications between a prosecution witness and court members during an unrecorded recess are indeed presumptively prejudicial, such presumption being subject to refutation if the Government demonstrates the absence of any prejudice resulting from the communication. See United States v Adamiak, supra, and the numerous Federal authorities there collated. And if such unrecorded communications occur they are, nonetheless, a part of the proceedings although not reflected in the transcript. United

States v Walters, 4 USCMA 617, 16 CMR 191. The problem, then, as stated by appellate defense counsel, is how such a deficiency in the record—unknown until after the trial—is to be corrected and preserved for consideration on appeal.

This is not the first occasion on which this Court has been confronted with that question, and the *Walters* decision makes the answer plain. As there stated, generally it is preferable that a certificate of correction be obtained in order to fill lacunae in the transcript. However, we indicated that, under certain circumstances, post-trial affidavits are a permissible means by which to bridge such gaps in the record. See also United States v Roberts, 7 USCMA 322, 22 CMR 112. As the defense points out, the present case is not one where the record itself discloses the occurrence of an improper communication, or otherwise suggests the same. Cf. United States v Solak, supra. Under the circumstances, we are not prepared to hold that the defense affidavits should be rejected.

But, argues the Government, the accused and his counsel delayed filing the affidavits concerning the conversation for over one month. Thus, the same were not received until after the convening authority had approved the proceedings, and he was prevented from taking appropriate action in light of the claimed improper communication. See Article 62(b), Uniform Code of Military Justice, 10 USC § 862; and Manual for Courts-Martial, United States, 1951, paragraphs 86c and d, and 89b. Accordingly, it is urged that accused is barred from raising the matter during appellate review, and that the board erred in considering the defense affidavits on their merits.

On the other hand, the defense asserts that counsel here properly "forward[ed] for attachment to the record of proceedings a brief of such matters as he feels should be considered in behalf of the accused on review, including any objection to the contents of the record which he considers appropriate." See Article 38(c), Uniform Code of

44

Military Justice, 10 USC § 838. And it is pointed out that trial defense counsel has explained the delay in filing the affidavits. It would appear he was unaware the convening authority had already acted when he forwarded them and, from his experience with cases tried at the post where this court-martial was convened, he did not expect the record would be compiled and reviewed by the convening authority in less than thirty days. Further, it was desired to allow the two affiants time to effect their impending transfers from the witness' command, to avoid feared retaliation.

We reiterate what was written for the Court in *Walters*, supra, by Judge Brosman:

"Generally, of course, a party complaining of omissions in a record of trial should be urged to seek a certificate of correction—and an inability to obtain such a document would bear on the weight to be attached to the complaint. Further, we have no intention of permitting the accused or his counsel to delay indefinitely in presenting a challenge to completeness of the record. . . . If such a contention is raised promptly—as will certainly be required—false allegations can ordinarily be refuted, and true complaints can usually be verified. It is obvious that, in such instances, substantial weight must and will be given to determinations by the convening authority and his staff judge advocate concerning the existence or nonexistence of 'proceedings' unreported in the record of trial." [4 USCMA at pages 626–27.]

Prompt action in raising contentions of this sort is most desirable and virtually essential as conducive to ascertaining the true circumstances of an incident. As is well known, passage of time quite often occasions a less accurate recollection of what transpired than is the case when inquiry is made soon after the fact. Moreover, this is particularly so when the parties attach no significance to the event, and have no reason to fix it in their minds.[2]

Further, with regard to the possibility of retaliation against the soldiers executing affidavits for the defense, it should be sufficient to state that, unless the averments be false, there should properly never be occasion for such fear. Certainly, retaliation against the affiants would never be sanctioned by this Court. Nor would it be, we confidently trust, at any other level in the military justice system. Thus, while counsel's motive in his endeavor to preclude feared retaliation is commendable, it is not inappropriate to note that the interests of the pair may be adequately protected otherwise; counsel's primary and foremost obligation is to his client and to insure against any miscarriage of justice.

In any event, however, it would appear that accused's lawyer acted in good faith in filing the affidavits in light of his prior experience as to the time required for review in cases of this sort. Certainly we will not assume that there was any deliberate withholding of the information until after the convening authority had acted. Accordingly, although we are not to be misunderstood as retreating from the previously quoted injunction for timely action in matters of this sort, we hold, under the circumstances, that the board of review did not err in accepting the defense affidavits. The delay by the defense in filing the affidavits, and the discrepancies in the versions and time of the conversation asserted by the various affiants, are matters that properly may be taken into consideration as to the weight to be accorded the affidavits, but the same are proper for consideration.

## II

The second issue upon which our action is requested concerns the board's conclusion that it was precluded from

---

[2] Indeed, the case at bar exemplifies the validity of these observations. Although the board of review treated the affidavits of all parties as relating to the same conversation, as we have seen in a previous footnote there is some indication that the conversation referred to by the court member and witness may have taken place during the morning session of trial, while the defense affidavits relate to an incident in the afternoon.

45

considering the affidavits submitted by the Government on the merits. That holding was based on this Court's decision in United States v Solak, supra, where it was stated:

"Subsequent to the issuance of the order granting review, the Government sought to fill in the interstices by submitting affidavits of the reporter, trial counsel, law officer, president, and one court member. This is a permissible, but usually unsatisfactory, alternative to a certificate of correction. United States v Walters, 4 USCMA 617, 16 CMR 191; United States v Roberts, 7 USCMA 322, 22 CMR 112. The use of this method of completing the record may be resorted to only when the affidavits are in such substantial accord that they may be equated to 'amending the record with the consent of the parties.' United States v Walters, supra.

"These affidavits do not satisfy that requirement for there is no indication the defense concedes the existence of the facts to which they pertain." [10 USCMA at page 444.]

We believe the board of review has extended *Solak* to embrace a situation quite different than the facts involved in that decision. There, it must be borne in mind, quite apart from any affidavits the authenticated transcript itself pointed to an unrecorded communication and the nature thereof. This is made plain in the Court's opinion where, in addition to a quotation of the pertinent portion of the record, the following statement appears:

"The facts recited by the authenticated record of trial in this case—a record unchallenged by any allegation of fraud—require the inference that an off-the-record conference occurred between the law officer and the court members. This conference took place after the court declared its intention of adjourning overnight—a prerogative of the president. Rather than accede to this request, the law officer declared a recess. In these circum-

stances, the conclusion that he declared a recess for conferring with the president is compelled. . . .

"Moreover, the circumstances existing at the time the recess was declared shed light on the only possible subjects of such a conference. The hour was growing late. The court had been deliberating over three hours. Although a verdict had not been reached when the recess was declared, all was in readiness after its termination. From these circumstances a very serious question of whether or not the court-martial was coerced into concluding its deliberations and announcing its findings arises." [10 USCMA at page 445.]

Under those circumstances, no certificate of correction or affidavits were required to raise the issue.[3] And, since an authenticated record imports verity, we were unwilling to resort to ex parte affidavits offered by the Government to fill the void in the transcript, particularly one involving a so-called "closed conference," where an interloper injects himself into the deliberations of the court-martial. A certificate of correction is a proper means of amending a record to reflect facts that actually took place, but ex parte affidavits, the substance of which is not verified or in any wise conceded by the other party, may not be equated to such certificate. See United States v Walters, supra.

Manifestly, the facts here are different. The present case involves not a closed conference, but an unrecorded communication. And the trial transcript, unlike *Solak*, does not indicate that any such communication occurred. There is, therefore, no reason for requiring either party, by itself, to provide the equivalent of a certificate of correction in order to consider the affidavits it offers as a supplement to the transcript. Hence, the fact that the defense does not concede the truth of the facts averred in the affidavits submitted by

---

[3] In discussing the first issue in its brief before this Court, even the defense recognized this distinction, as counsel argued affidavits were an acceptable means of raising the issue in an instance where, unlike *Solak*, the record itself disclosed no improper communication.

the Government is of no more importance than whether the Government, in turn, would admit to the facts set forth in the defense's "Addition to Record of Incident of Trial." Rather, the substance of the affidavits submitted by both parties concerning the conversation would appear to be quite proper for consideration in resolving the issue raised by the defense, whether by the convening authority or the board of review. Cf. Manual for Courts-Martial, United States, 1951, paragraphs 86c and d, supra, and paragraph 95.

The presumption of prejudice arising from off-the-record communications is, as previously noted, rebuttable, and to refuse to consider the substance of the affidavits submitted by both parties is effectively to preclude such rebuttal. In short, even though the affidavits of the respective parties effectively join the issue—those on the one hand indicating reversible error, those on the other effectively dispelling any fair risk of prejudice—the board's application of *Solak* to the instant situation produces this anomaly: The averred facts are divided so that the existence of a presumptively prejudicial communication is determined, but possible explanation of the real nature of the communication is barred. We are not persuaded that such an artificial division is permissible. The fundamental nature of this whole inquiry goes no further than this: The truth of what actually happened must be ascertained and spread on the record, to insure that accused was accorded a fair trial and that his conviction was not infested with error prejudicial to his substantial rights. Cf. United States v Thomas, 13 USCMA 163, 32 CMR 163.

In our view the Government's affidavits are not to be dissected but are properly to be considered as a whole. When that is done, it is plain an issue is raised as to whether or not the conversation was prejudicial to accused.

Of course, we have no way of knowing which version of this controverted matter is correct, and we neither express nor intimate any view thereon. We do conclude, however, that the board went astray in barring the Government's affidavits on the basis of United States v Solak, supra. The second certified question, therefore, is answered in the negative.

### III

In view of the previous discussion, there is no reason to dwell at any length on the third certified question. As the affidavits of both parties may properly be considered for whatever weight may be attached to the same, the board of review should, in the exercise of its sound discretion, either determine this controversy itself, or return the record to the officer exercising general court-martial jurisdiction for that purpose. See United States v Allen, 8 USCMA 504, 25 CMR 8; paragraph 95, Manual for Courts-Martial, supra; United States v Walters, supra.

For the foregoing reasons, the decision of the board of review is reversed. The record is returned to The Judge Advocate General for reference to the board of review for further action not inconsistent with this opinion.

Chief Judge QUINN and Judge FERGUSON concur.