UNITED STATES of America, Appellee,

v.

Ricky D. WARE, Private First Class, U. S. Marine Corps, Appellant.

No. 33,182.
NCM 75–2733.

U. S. Court of Military Appeals.

May 8, 1978.

Lieutenant Christopher C. Henderson, JAGC, USNR and Lieutenant Karl Zobrist, JAGC, USNR were on the briefs for Appellant, Accused.

Lieutenant Colonel P. N. Kress, USMC and Lieutenant Steven D. Moore, JAGC, USNR were on the briefs for Appellee, United States.

Opinion of the Court

PER CURIAM:

This special court-martial [1] was convened on January 27, 1975, by Lieutenant Colonel Rader, the Commanding Officer of the Headquarters and Maintenance Squadron–16, Detachment Marine Aircraft Group–16, 3d Marine Aircraft Wing located at Camp Pendleton, California. At an initial Article 39(a), 10 U.S.C. § 839(a) session during the trial held approximately one month subsequent to the convening order, the trial counsel announced a modification to it, replacing the original military judge. The oral modification was to be supplemented by a written memorandum. A document purporting to do this was signed by one Lieutenant Colonel Huebner, Commanding Officer of the Marine Light Helicopter Squadron–267, Detachment Marine Aircraft Group–16, 3d Marine Aircraft Wing, at Camp Pendleton. This discrepancy remained unnoticed until raised by Appellate Defense Counsel before the United States Navy Court of Military Review. The

1. The appellant was tried by military judge sitting as a special court-martial convened by the Commanding Officer, Headquarters and Maintenance Squadron–16, Detachment Marine Aircraft Group–16, 3d Marine Aircraft Wing, on February 24, 1975 at the Marine Corps Base, Camp Pendleton, California. In accordance with his pleas he was found not guilty of a violation of Article 86, Uniform Code of Military Justice; contrary to his pleas, he was found guilty of violations of Articles 91 and 134, Uniform Code of Military Justice, for disrespectful language toward a superior non-commissioned officer and for communicating a threat, respectively. The military judge sentenced him to be reduced to pay grade E–1, forfeiture of $175 per month for three months, confinement at hard labor for three months, and a bad-conduct discharge. Although the military judge recommended suspension of the discharge and part of the confinement, the sentence was approved by the convening and supervisory authorities. On July 29, 1976, the United States Navy Court of Military Review approved the findings and sentence.

government, in attempting to cure the error, produced an affidavit from Colonel Rader asserting that his oral modification had not been reduced to writing. We allowed a grant of review to determine if the court-martial had jurisdiction to proceed absent a signed modification to the convening order executed by the proper authority. This question we are compelled to answer in the negative.

In its terse disposition of the issue we are now examining, the United States Navy Court of Military Review opined simply that "[t]he defect in the record noted in the first assignment has been corrected by an affidavit of the convening authority." This is an insufficient treatment of yet another jurisdictional problem caused as a direct result of apparently indifferent discharge of the simplest and most basic administrative duty of those responsible for the military court-martial, i. e., properly prepared convening orders and attendant modifications. While in *United States v. Carey*, 23 U.S.C.M.A. 315, 49 C.M.R. 605 (1975), we allowed a convening authority's affidavit to save an otherwise "sinking record," Judge Cook, speaking for the Court, observed: "Yet this characterization depicts a deplorable situation that in other circumstances may not be tolerated." *Id.*, at 316, 49 C.M.R. at 606. In this circumstance we are disinclined to endow with a presumption of regularity a stale order (if this eleventh hour affidavit is to be so viewed) written fourteen months after the apparent previous oral appointment. Absent the affidavit, which we will not allow as a demonstration that this court-martial was properly constituted, the record is devoid of a proper written order modifying the original convening order. Following *United States v.*

*Carey, supra*, the decision of the United States Navy Court of Military Review is reversed. In the interest of judicial economy the charges are ordered dismissed.

COOK, Judge (concurring in the result):

Whenever the Uniform Code of Military Justice requires that a particular action be in writing, it expressly provides therefor, or the language of the reference necessarily implies a writing.[1] The provisions of the Code regarding the convening of a court-martial and the detail of persons to it, such as the military judge, do not expressly, or by necessary implication, demand that the appointment be in writing. *See* Articles 22 through 29, UCMJ, 10 U.S.C. §§ 822 through 829. That circumstance alone impresses me as indicating an intention on the part of Congress that the absence of a written appointment does not mean, as the majority say, that the court-martial has no "jurisdiction to proceed absent a signed . . . order executed by the proper authority."

I know of no constitutional principle that requires a written order of appointment as a prerequisite to the right of the appointee to act in the capacity authorized by oral order of proper authority. In the very first year of its existence, this Court observed that when Congress "specifically grants what it considers to be a substantial right, we cannot deny the authoritative requirement by refusing to recognize it." *United States v. Clay*, 1 U.S.C.M.A. 74, 81, 1 C.M.R. 74, 81 (1951). *See also United States v. Dean*, 20 U.S.C.M.A. 212, 43 C.M.R. 52 (1970). In my opinion, the converse is also true; that is, when neither the Constitution

---

1. Illustrative are the following: Article 2(3)(a reservist is subject to UCMJ if he accepts "written orders" which so provide); Article 4 (an application to the President for a court-martial by a dismissed officer shall be "written"); Article 11 (defining the obligation to receive a prisoner upon "a statement, signed by" the committing officer); Article 15(g) (a service Secretary may prescribe "the form of records" and "certain categories . . . shall be in writing"); Article 16 (request for trial by military judge alone "in writing"); Arti-

cle 19 (forbidding imposition of a bad-conduct discharge by a special court-martial "unless a complete record of the proceedings and testimony has been made"); Article 25 (request "in writing" for enlisted members and convening authority must make a "detailed written statement" if enlisted persons are not available); Article 27(c)(1) (a convening authority must make a "detailed written statement" to explain inability to obtain qualified defense counsel for accused).

nor Congress requires that a legal action be in a particular mode, this Court should not recognize as legal only that action taken in the mode preferred by the Court. We have confronted this sort of situation in regard to authorization to search. As neither the Constitution nor any provision of the Code requires that it be in writing, this Court has urged use of a writing, but has never commanded it. *See United States v. Martinez,* 16 U.S.C.M.A. 40, 42, 36 C.M.R. 196, 198 (1966); *United States v. Hartsook,* 15 U.S.C.M.A. 291, 294, 296, 35 C.M.R. 263, 266, 268 (1965).

As the Code is silent on the subject, I turn to the Manual for Courts-Martial, United States, 1969 (Revised edition), which, in my view, has the force of law on the matter in issue as a procedural subject within the President's rule-making authority under Article 36, UCMJ, 10 U.S.C. § 836. A number of provisions in the text of the Manual indicate that an order convening a court-martial and detailing appropriate persons to it should be in writing. For example, paragraph 4e provides that "[t]he order convening a court-martial to which a military judge is detailed will expressly state that the military judge is certified as qualified for such duty"; in contrast, detail of a reporter to a court-martial "may be oral and need not be shown in the record of trial or allied papers." Para. 7, Manual, *supra.* Paragraph 36b, which deals with the "[f]orm and content" of a convening order, and Appendix 4 of the Manual, which is entitled "Forms for Orders Convening Courts-Martial," obviously contemplate issuance of a written order.[2] However, neither the text nor the Appendix forbids an oral order. More importantly, paragraph 37 sanctions an oral change to the initial convening order, in language which I construe as authorizing a newly detailed person to act immediately in the capacity for which he was detailed and before the convening authority has issued a confirming written order. The pertinent provision is as follows:

*Changes in composition.* Changes in the composition of a court-martial, such as changes which involve the detail of new personnel to a court or the relief of a member, are usually accomplished by the promulgation of formal written orders amending the original convening order. If it is necessary to make a change by oral order, message, or signal, the oral order, message, or signal should be confirmed by written order. [Manual *supra,* para. 37c(1).]

In my view of the law, therefore, a proper oral order substituting the trial judge would have enabled the newly detailed judge to act immediately, notwithstanding a confirmatory, written order had not yet been issued. That brings me to the effect of *United States v. Carey,* 23 U.S.C.M.A. 315, 49 C.M.R. 605 (1975), which is cited by the majority in support of its position that the failure to confirm an oral order of substitution with a written order before completion of the trial proceedings is fatal error. Patently, the time of consideration is not a jurisdictional requirement; consequently, it is immaterial whether the accused pleaded guilty or not guilty. *United States v. Dean, supra. See also United States v. Coleman,* 19 U.S.C.M.A. 524, 42 C.M.R. 126 (1970).

*Carey* deplored the Government's gross inattention to the Manual provisions, but it nonetheless affirmed the trial results on the basis of an undisputed post-trial showing that the person who served at the court-martial was, in fact, detailed to it before he undertook performance of his trial duties by oral modification of the initial convening order. Earlier cases allowed similar post-conviction clarification of the record. *United States v. Gilliland,* 10 U.S.C.M.A. 343, 27 C.M.R. 417 (1959); *United States v. King,* 8 U.S.C.M.A. 392, 24 C.M.R. 202 (1957). *Carey,* however, did stress that timely action was necessary " 'to ascertaining the true circumstances.' " 23 U.S.C.M.A. at 316, 49 C.M.R. at 606. Certainly, inordinate delay may defeat the effort to fill an apparent

---

**2.** *See also* paragraphs 44f, h; 46b; 59; 61a, c, e, f, and h, i); Appendix A8–3, Guide-Trial Procedure, Manual for Courts-Martial, United States, 1969 (Revised edition).

gap in the record. *See United States v. Strahan*, 14 U.S.C.M.A. 41, 33 C.M.R. 253 (1963). Moreover, I would suppose that once the court-martial process is complete, within the meaning of Article 76, UCMJ, 10 U.S.C. § 876, the authority of the court to act as constituted at trial would have to stand or fall on the record as it then exists. *Compare* my dissent in *United States v. Alef*, 3 M.J. 414, 422 (C.M.A. 1977).

Looking at the record before us, I am constrained to conclude, contrary to the determination of the Court of Military Review below, that the uncertainty as to the trial judge's timely detail to the court has not been corrected by the convening authority's affidavit. The convening authority avers that prior to accused's trial he "orally modified" the initial convening order by relieving Captain Holder as trial counsel and appointing Captain Storti in his place. He further represents the oral modification was not reduced to writing "because of an administrative oversight." I do not view these representations as inherently suspicious, and I do not believe that, as a matter of law, they are so stale that they could not operate to complete the record if they were otherwise sufficient for that purpose. *See United States v. Strahan, supra* at 44–45, 33 C.M.R. at 256–57. The difficulty I have with the affidavit is that neither it, nor any other matter in the record, explains the appearance of the "Ratification of My Oral Modification," executed by Lieutenant Colonel Hubner, who was not the convening authority, but the commander of another unit within the 3d Marine Aircraft Wing.

The record of trial was authenticated by the trial judge himself; the fair inference is that he regarded the document in the record as correctly representing the source of his authority to act as trial judge. The Government would have us ignore the document as merely an "administrative error." The problem with the argument is that it disregards the standard rule that authentication of a record of trial "imports verity" to the proceedings. *United States v. Strahan, supra* at 46, 33 C.M.R. at 258. *See also United States v. Albright*, 9 U.S.C.M.A. 628, 26 C.M.R. 408 (1958). As both the authenticated record and the affidavit are unaccompanied by any other evidence as to the authority of the substitute judge to act, I would suppose the authenticated record would have to prevail over the affidavit. *United States v. Strahan, supra* at 46. But, even in the light most favorable to the Government, the situation would be comparable to that in which two official documents contradict each other as to the existence *vel non* of a fact essential to decision. *See* my separate opinion in *United States v. Mahan*, 1 M.J. 303, 307 (C.M.A. 1976). The effect is that one document cancels the other, and recourse must be had to other evidence to determine whether the initial convening order was or was not changed. As there is no such evidence, I agree with the majority that the functions of the trial judge were performed by a person who was apparently not properly detailed to the court. From the totality of the circumstances in the case, the interests of justice would appear to be better served by dismissal of the charges than by continuing the proceedings to achieve a purpose that may, at this late date, be unattainable. I, therefore, concur in reversal of the decision of the Court of Military Review and in dismissal of the charge.