**UNITED STATES, Appellee,**

v.

**Michael D. PERKINSON, Operations Specialist Seaman Apprentice, U.S. Navy, Appellant.**

**No. 42,947.**
**NMCM 81 2544.**

U.S. Court of Military Appeals.

Oct. 24, 1983.

For Appellant: *Lieutenant Georgia L. Winstead,* JAGC, USNR (argued).

For Appellee: *Lieutenant Commander Michael R. McGuire,* JAGC, USN (argued); *Captain T.C. Watson, Jr.,* JAGC, USN (on brief); *Commander W.J. Hughes,* JAGC, USN.

*Opinion*

FLETCHER, Judge:

This case * was granted review to consider two questions:

I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY FAILING TO (A) SET FORTH THE PROPER PROCEDURES TO BE UTILIZED IN RECONSIDERATION AND (B) DETAIL AND TAILOR HIS INSTRUCTIONS AS TO POSSIBLE CLEMENCY RECOMMENDATIONS TO

---

* Appellant was found guilty of violations of Articles 121 and 130 of the Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 930, respectively. He was sentenced to a bad-conduct discharge. The findings and sentence were approved by the convening and supervisory authorities and affirmed by the United States Navy-Marine Corps Court of Military Review.

THE SITUATION WHICH HAD DE-
VELOPED?

## II

WHETHER THE COURT–MARTIAL
LACKED JURISDICTION TO PRO-
CEED WHEN THE PURPORTED
ORAL MODIFICATION TO THE CON-
VENING ORDER ON 3 MARCH 1981,
APPARENTLY DETAILING THE
MEMBERS WHO SENTENCED AP-
PELLANT, WAS NOT REDUCED TO
WRITING AND MADE PART OF THE
AUTHENTICATED RECORD, AND
THE ONLY WRITTEN CONFIRMA-
TION IS IN THE FORM OF AN AFFI-
DAVIT EXECUTED APPROXIMATE-
LY 11 MONTHS AFTER TRIAL?

After perusal of the facts herein involved,
we conclude that the only relief warranted
relates to the second granted issue. In this
case the special court-martial lacked juris-
diction to proceed and, thus, reversal of the
court below is required.

## I

▮ We turn first to our disposition of
the error alleged in granted issue I. It is
clear "that the perusal of the sentencing
worksheet by the judge, prosecutor, and
defense counsel for error prior to the read-
ing of the sentence by the president of the
court ... [does] not amount to an 'an-
nouncement' of the sentence as defined by
our case law." *United States v. Justice,* 3
M.J. 451, 454 (C.M.A.1977) (Fletcher, C.J.,
concurring). Regardless of whether, in
light of this, the procedures in this case can
be properly denominated reconsideration,
our conclusion is that this situation did not
raise the issue of clemency and necessarily
call for more specific instructions.

▮ We have ruled that the military
judge's instruction to members must be ad-
equate to allow the court "intelligently to
determine a punishment appropriate to the
accused before it." *United States v. Turn-
er,* 14 U.S.C.M.A. 435, 438, 34 C.M.R. 215,
217 (1964). "The language of *Turner*
makes it clear that in a proper case it is
error for the military judge to fail to dis-

close to the court members their right to
recommend clemency." *United States v.
Keith,* 22 U.S.C.M.A. 59, 63, 46 C.M.R. 59, 63
(1972).

During argument on sentence in *United
States v. Keith, supra,* the question of a
discharge other than a bad-conduct dis-
charge had been discussed, and as a result a
series of questions regarding this subject
were posed to the military judge by the
members. His response, however, was
merely to reiterate that the court had only
the jurisdictional power to impose a bad-
conduct discharge. In spite of the fact that
the members requested "guidance as to
'what observations are available,' " *id.* at 64,
46 C.M.R. at 64, the military judge declined
to give any instructions on the right of
members to recommend clemency. Without
examining the inherent prejudice because
of other error, we declared this to be error.
It should be noted that this principle was
not applied in *United States v. Turner, su-
pra,* where we ruled that, in spite of the
failure to instruct on possible clemency rec-
ommendations, "the record of trial leaves
no room for any inference of prejudice to
the accused." *Id.* at 439, 34 C.M.R. at 219.

We believe that the facts of the present
case do not sufficiently raise the possibility
that the members intended to recommend
clemency, so instructions were not required.
After deliberations, the President provided
the sentence worksheet to the military
judge for his examination prior to their
announcing sentence. The military judge
stated:

The.president has handed me appellate
Exhibit V, the sentence worksheet and,
next to number eight, which is to be
discharged from the naval service with a
bad conduct discharge, the words "bad
conduct discharge" have been struck out
and the words "general discharge as un-
suitable for military service" have been
inserted. Members of the court, the only
discharge that may be included in the
sentence of a special court-martial is a
bad conduct discharge. With regard to
that portion of the sentence, your only
options are a bad conduct discharge or no

bad conduct discharge. Therefore, I am going to send you out to deliberate again and vote anew on the sentence.

Further he stated:

[M]embers of the court, under the law my perusal of the sentencing worksheet and pointing out an anomaly in the sentencing worksheet did not constitute an announcement of the sentence by the court. Therefore, I am going to send you out to reconsider the sentence in full. With regard to the discharge portion of the sentence, again, the accused may be sentenced to a bad conduct discharge or not. But those are your only options with regard to that portion of the sentence. And, again, nothing I have said is meant to imply any views that I may have on what an appropriate sentence might be. That is purely within your discretion as member[s] of the court. Now, having made that clear, does the court desire any other instructions to be repeated or explained?

The mere attempt to award a general discharge, standing alone, was insufficient to signal an intention on the part of the members to recommend clemency. Under these facts, no instructions were required.

## II

The second granted issue must be resolved in favor of the accused. At trial, government counsel announced that an oral amendment to the convening order had been made on March 3, 1981, and that the convening authority's written confirmation of that fact would follow. Not until the absence of this written confirmation was raised before the Court of Military Review did a confirmation follow and this was in the form of an affidavit executed over 10 months later. We have clearly signaled our disinclination "to endow with a presumption of regularity" an "eleventh hour affidavit" to save "an otherwise 'sinking record.'" *United States v. Ware,* 5 M.J. 24, 25 (C.M.A.

1978); *see United States v. Carey,* 23 U.S.C. M.A. 315, 49 C.M.R. 605 (1975). Absence of the written confirmation means the court members were not properly appointed. This is a jurisdictional defect which affects the entire trial.

The decision of the United States Navy-Marine Corps Court of Military Review is reversed. The findings and sentence are set aside. The charges are dismissed.

EVERETT, Chief Judge (concurring in the result):

### I

After the members of a court-martial have reached a sentence but before its announcement, they may reconsider the sentence for any purpose[1]; and often the members are expressly instructed concerning their power to reconsider. However, the need for instructions on reconsideration assumes that the members have reached a sentence which could lawfully be adjudged in its entirety. Where a proposed sentence is illegal because some facet of it is beyond the power of the court to adjudge, it should be disregarded as "void *ad initium,*" rather than reconsidered. *United States v. Jones,* 3 M.J. 348, 352 (C.M.A.1977) (Fletcher, C.J., dissenting).

In the case at bar, the judge's inspection of the sentence worksheet did not constitute an "announcement" of the sentence. *See United States v. Justice,* 3 M.J. 451, 452 (C.M.A.1977). Therefore, no additional rights accrued to appellant by reason of that inspection. Thereafter, the judge sent the court members out to "vote anew on the sentence"—a procedure entirely appropriate because they had not yet arrived at a lawful sentence. Obviously, they complied with these instructions, for the sentence subsequently announced differed in every

1. Once the sentence is announced, however, the members "may not ... reconsider the sentence with a view to increasing its severity." Para. 76c, Manual for Courts-Martial, United States, 1969 (Revised edition). *See United States v. Justice,* 3 M.J. 451 (C.M.A.1977); *United States v. Jones,* 3 M.J. 348 (C.M.A. 1977).

respect from that which originally appeared on the sentence worksheet.[2]

In this sequence of events, I find nothing which prejudiced appellant; and the instructions were not inadequate in any way. Thus, there is no merit to the first issue.

## II

I concur with the principal opinion's resolution of the second issue. Although in most instances I would allow a rehearing on the original charges, I am convinced that, in light of the charges, type of court-martial, and original sentence in the present case, it is "[i]n the interest of judicial economy" that the charges be dismissed. *Cf. United States v. Ware,* 5 M.J. 24, 25 (C.M.A.1978).

COOK, Judge (concurring and dissenting):

I concur with the majority's resolution of the first issue; however, I do not agree that dismissal of the charges is the proper remedy for the second granted issue.

Charges of larceny and housebreaking, in violation of Articles 121 and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 930, respectively, were referred for trial to a special court-martial appointed by Special Court-Martial Convening Order Number 81–80 issued by the Commanding Officer of the USS ENTERPRISE (CVN–65). When trial began, an Article 39(a), UCMJ, 10 U.S.C. § 839(a), hearing was held before the military judge, trial and defense counsel who were appointed by that order. The accused pleaded guilty, and, after a thorough providence inquiry, the military judge accepted the pleas. Then, when the members were called in for the purpose of adjudging sentence, trial counsel announced:

> This court is convened by the USS Enterprise, CVN–65, special court-martial convening order number 81–8[0] as amended by oral modification on 3 February 1981, written confirmation of which will follow.

After correcting the date of the oral modification to March 3, 1981, trial counsel proceeded to list the detailed members of the court who were different from those listed on the previous written order and who were presumably added by the oral amendment. Subsequently, the members sentenced the accused. The military judge authenticated the record on March 24, 1981.[1] The Commander of the USS ENTERPRISE approved the findings and sentence as adjudged, which were less than the limits of a

---

2. This reenforces the rationale of Judge Fletcher when he dissented in *United States v. Jones, supra* at 352. In support of his view that the sentence should be examined in its *entirety* in determining its lawfulness, he observed: "To hold otherwise is to subscribe at this level to a concept which prognosticates that there is no interrelationship among the several elements of the announced sentence." As did *Jones,* this case "document[s] the reciprocal influence of the elements in the minds of the court."

1. e. *Correction of the record.* After the record has been transcribed and before it is authenticated, the trial counsel should examine it carefully for errors or omissions. If any are discovered, he should make and initial those changes which are necessary to make the record show the true proceedings.

   When undue delay will not result, the trial counsel should permit the defense counsel to examine the record before it is forwarded to the convening authority.... If the defense counsel discovers errors or omissions in the record, he should suggest to the trial counsel appropriate changes to make the record show the true proceedings.

At any time before the record is forwarded to the convening authority, the persons who authenticate the record may change it to make it show the true proceedings.

f. *Authentication.* The record in each case shall be authenticated by the signature of the military judge who was actually present at the conclusion of the proceedings.

Paragraphs 82e and f, as applied to special courts-martial by paragraph 83a, Manual for Courts-Martial, United States, 1969 (Revised edition). It would not be unreasonable to expect that one of these parties, in discharging their prescribed duties, should have detected this significant omission. In this case, their derelictions may be explained by the fact that the court was convened by the commander of a vessel which might well have gone to sea prior to the trial or prior to the initial review. This might explain the necessity for the oral amendment. However, the commander who convened the court-martial did sign the original action approving the findings and sentence. We assume that he did so on the advice of his staff judge advocate who likewise should have noticed the omitted order.

pretrial agreement. The supervisory authority also approved the findings and sentence, based upon the recommendations of his staff judge advocate. It should be noted that neither the review of the staff judge advocate nor comments of defense counsel submitted pursuant to the mandate in *United States v. Goode,* 1 M.J. 3 (C.M.A. 1975), mentioned the oral modification or the fact that the confirming written order was not then part of the record.[2]

When the accused's case was presented to the Court of Military Review, appellate defense counsel assigned as error the omission of the written confirming order. Shortly thereafter an affidavit from the Commander of the USS ENTERPRISE, dated January 28, 1982, was received which stated, in pertinent part:

That, I, Captain R.J. Kelly, U.S. Navy, Commanding Officer, USS ENTERPRISE, acting in my capacity as the special court-martial convening authority in the case of U.S. versus OSSA Michael D. Perkinson, U.S. Navy, did convene said special court-martial with my special court-martial convening order number 81–80 dated 15 December 1980.

That, while acting in said capacity I verbally relieved the following officers as members of said special court-martial:

\* \* \* \* \* \*

[Herein followed the names of the four relieved officers.]

That, while acting in said capacity I verbally assigned the following officers as members of said special court-martial:

\* \* \* \* \* \*

[Herein followed the names of the three appointed officers.]

That, this constitutes written confirmation of my oral modification of said court-martial of 3 March 1981.

/s/ R.J. Kelly
R.J. KELLY
Captain, U.S. Navy
Commanding Officer
USS ENTERPRISE
(CVN–65)

The Court of Military Review affirmed in a short-form decision.

This is not the first time that this Court has encountered a challenge to the jurisdiction of a court-martial on the ground that proper written orders confirming prior oral amending orders were not part of the record before us. In *United States v. Carey,* 23 U.S.C.M.A. 315, 49 C.M.R. 605 (1975), the officer who acted as trial counsel was not named in the convening order, but his appointment first appeared in an amendment to the convening order dated some two weeks after trial was completed. The amendment made no mention of any oral amending order or any intent to confirm such an order. However, an affidavit filed by the convening authority "declare[d] that the amending order ... 'reflect[ed] an oral modification that I made prior to the court which was held ...'" Agreeing with the characterization of the Court of Military Review that "appellate Government counsel 'rushed to save this sinking record'" and that "this characterization depicts a deplorable situation that in other circumstances may not be tolerated," we nevertheless held that "the court-martial which tried appellant was properly constituted." *Id.* at 316, 49 C.M.R. at 606 (footnote omitted).

Later in *United States v. Ware,* 5 M.J. 24 (C.M.A.1978), the trial counsel announced an oral modification of the convening order which replaced the military judge. A document purporting to confirm this action was attached to the record signed by the Commanding Officer of Marine Light Helicopter Squadron-267. However, upon appeal it was noted that the original convening order was signed by the Commanding Officer of Headquarters and Maintenance Squadron-16. In attempting to cure this obvious discrepancy the Government supplied an affidavit from the officer who signed the original convening order "asserting that his oral modification had not been reduced to writing." We held:

2. As noted below, the record was incomplete without the confirming order, and could not have been acted upon by the supervisory authority. Article 65(a), Uniform Code of Military Justice, 10 U.S.C. § 865(a).

In this circumstance we are disinclined to endow with a presumption of regularity a stale order (if this eleventh hour affidavit is to be so viewed) written fourteen months after the apparent previous oral appointment.

*Id.* at 25.

There I concurred in the result on the ground that neither the affidavit

nor any other matter in the record, explains the appearance of the "Ratification of My Oral Modification," executed by Lieutenant Colonel Hubner, who was not the convening authority, but the commander of another unit within the 3d Marine Aircraft Wing.

Finding no other evidence of record that the initial convening order had been properly amended, "I agree[d] with the majority that the functions of the trial judge were performed by a person who was apparently not properly detailed to the court." *Id.* at 27.

In this case we have a third situation: an affidavit from the original convening authority acknowledging his previously mentioned oral modification and purporting to confirm it. The question is whether a last-minute attempt "to save this sinking record" is sufficient to do so. I agree that it is not, but at that precise point I depart from the majority opinion.

Paragraph 37a, Manual for Courts-Martial, United States, 1969 (Revised edition), has this to say about changes in personnel of courts-martial:

[I]t is within the discretion of the convening authority to make changes in the composition of courts-martial convened by him. For instance, he may detail new members to a court in lieu of, or in addition to, the members of the original court; or he may detail a new military judge, trial counsel, or defense counsel in lieu of the personnel designated to perform those respective duties by the original convening order.

\* \* \* \* \* \*

c.(1) ... Changes in the composition of a court-martial, such as changes which involve the detail of new personnel to a court or the relief of a member, are *usually* accomplished by the promulgation of formal written orders amending the original convening order. If it is necessary to make a change by oral order, message, or signal, the oral order, message, or signal *should* be confirmed by written orders. (Emphasis added.) In all significant areas this paragraph continues the authority given by the same paragraph of the 1951 and 1949 Manuals (both Army and Air Force).

Prior Manuals made no mention of oral amending orders, and apparently, if such were ever issued, it was only rarely. Winthrop recognizes "Supplemental Orders," but says:

Prior to the organization of the court the Convening Order may be amended, modified, or supplemented by any number of subsequent Orders from the same source,—by which a member or the judge advocate may be relieved, new members added or substituted, the place or time of meeting changed, the hours of session extended &c. In the record of trial these Orders will properly follow the original Order, so that they may readily be compared therewith, and the authority of the court and of each member, and of the judge advocate, to act as they are shown to act in the proceedings, may clearly appear. Supplemental Orders may also be issued at any stage *pending the trial:* they are comparatively rare, however, after the arraignment.

W. Winthrop, *Military Law and Precedents* 160–1 (2d ed. 1920 reprint).

From these sources I am convinced that amending (or supplementing) orders changing the composition of a court-martial are proper, and that such amendments may be made orally. Thus, the jurisdiction of the court-martial to try the accused is not affected by the fact that the composition of the court-martial has been changed by oral order which was, in fact, properly announced by the trial counsel. It is the failure to confirm the oral order by a written amending order that has caused the problem here. Clearly such confirming or-

der must be attached to the record before action is taken by the convening authority, or he has acted upon an incomplete record.[3] Similarly, the supervisory authority should have insured that the proper written confirming order was part of the record before he approved the findings and sentence. Indeed, the military judge should have noted the absence of the confirming order when he authenticated the record of trial.[4]

Despite these lapses, I find no prejudice to the accused stemming from the composition of the court that tried and sentenced him. The error stems from the post-trial deficiencies of those persons who are charged with the approval of the record of trial. Consequently, I believe the remedy imposed by the majority—dismissal of the charges—to be incorrect. It may well be that in our supervisory role over the military justice system we must take action to correct such errors, but our supervisory ac-

tion should be directed to the source of the error committed and should not result in a sheer windfall to the accused who properly pleaded and was found guilty of the offenses charged. Such an action ignores the reality of the situation and the interest of the service in punishing offenders against the military code.[5] Even a rehearing at this time would serve no useful purpose as we can assume that the accused would again plead guilty in order to obtain the benefits of his pretrial agreement. The proper remedy would be to set aside the action of the supervisory authority and return the record to him for inclusion of a proper written confirming order and a new review and action. The record, thus made complete, could be properly reviewed by the Court of Military Review, and this Court, if appropriate.[6]

To this extent I dissent from the action taken by the majority.

---

**3.** In acting on the findings and sentence of a court-martial, the convening authority may approve only such findings of guilty, and the sentence or such part or amount of the sentence, as he finds correct in law and fact and as he in his discretion determines should be approved.

Article 64, UCMJ, 10 U.S.C. § 864.

**4.** *See* n. 1, *supra.*

**5.** There are three parties to each criminal action; one of those parties, not represented before this Court, has suffered by the majority's decision this day.

*Cooke v. Orser,* 12 M.J. 335, 372 (C.M.A.1982) (Cook, J., dissenting). *See also* Article 59(a), UCMJ, 10 U.S.C. § 859(a).

**6.** As shown above, this situation is probably peculiar to the Navy which grants court-martial authority to commanders of sea-going vessels. No doubt if the case had been tried aboard the USS ENTERPRISE, the omission would not have occurred. However, the trial occurred on shore. It might be preferable in such situations to transfer jurisdiction over the accused to the shore commander who could more easily monitor the production of a complete record of trial.