# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**R.Q. WARD, D.C. KING, M.G. MILLER**
Appellate Military Judges

## UNITED STATES OF AMERICA

v.

## ERIC D. RAINES
## LANCE CORPORAL (E-3), U.S. MARINE CORPS

### NMCCA 201400027
### GENERAL COURT-MARTIAL

**Sentence Adjudged**: 29 August 2013.
**Military Judge**: Col James Carberry, USMC.
**Convening Authority**: Commanding General, 3d Marine Division (-) (Rein), MCBH Kaneohe Bay, HI.
**Staff Judge Advocate's Recommendation**: Maj K.T. Carlisle, USMC.
**For Appellant**: Capt Jason Wareham, USMC.
**For Appellee**: CDR Gregory R. Dimler, JAGC, USN; Maj Crista D. Kraics, USMC.

**21 August 2014**

---------------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

MILLER, Judge:

The appellant entered mixed pleas at a trial by general court-martial with officer and enlisted members. Pursuant to his pleas, the military judge found the appellant guilty of two specifications of wrongfully using Spice in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The

members convicted the appellant, contrary to his pleas, of three specifications of committing indecent acts by surreptitiously video recording consensual sexual acts between himself and others without their knowledge or consent, one specification of wrongfully videotaping the private area of another without the person's consent, and one specification of forcible sodomy, in violation of Articles 120 and 125, UCMJ, 10 U.S.C. §§ 920 and 925. The members sentenced the appellant to 24 months' confinement, reduction to pay grade E-1, total forfeitures, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged.

The appellant raises the following three assignments of error: (1) that the evidence presented at trial to support the forcible sodomy conviction was legally and factually insufficient; (2) that the military judge plainly erred by incorrectly instructing the panel on the appellant's eligibility for rehabilitative services through the Veterans Administration (VA) with a punitive discharge; and (3) that the subjects of the video recordings had no reasonable expectation of privacy in the sexual acts being recorded and therefore the appellant's conduct in recording them was not indecent within the meaning of Article 120, UCMJ.

After careful consideration of the record of trial, the appellant's assignments of error, and the pleadings of the parties, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

**Background**

The appellant surreptitiously video recorded his sexual encounters with women on four separate occasions at his apartment in Kailua, island of Oahu, Hawaii between approximately May to July 2012. After he placed a digital camera in a glass door entertainment center at the foot of his bed, he then recorded his sexual encounters without the women's knowledge or consent. At trial, all four victims, A.B., J.G., A.D., and J.S, conceded that they willingly accompanied the appellant to his apartment with the expectation of sexual conduct, but denied any knowledge that the appellant was recording their activities. Similarly, all four testified that they would not have consented to the appellant video recording their private areas or sexual encounters.

2

A.B. met the appellant and his friends on the beach in May 2012. The appellant's friends invited everyone in the group to their apartment that was just a few blocks away from the beach for a post-beach barbecue. At the apartment, A.B. was provided an unknown rum drink served in a glass that was approximately seven inches high. At trial, A.B. described the drinks as very strong and described herself as not much of a drinker. She indicated that she thought she had consumed approximately five drinks that were served in a seven-inch-tall glass and became extremely intoxicated. At some point during the barbecue, A.B. pushed the appellant up against a wall and kissed him. Eventually they talked about going back to the appellant's apartment together. Although nothing was explicitly discussed, A.B. testified that she expected that they would have sexual intercourse. The appellant then drove A.B. back to his apartment. At trial, A.B. described herself as being intoxicated by that point and she did not recall any conversation in the appellant's car nor did she remember entering his apartment. She testified that she vaguely remembered arriving at his apartment and walking up the stairs.

Her first memory that night after entering the appellant's apartment was waking up on the appellant's bed face down with her shorts pulled down, the appellant on top of her and feeling a shooting, stabbing pain in her rectum. Record at 242. She testified that then the appellant immediately flipped her over onto her back and engaged her in sexual intercourse. She testified that although she did not resist intercourse and was "okay" with it, she would not have been okay with anal sex that night. *Id*. at 242-43.

A review of the video recording admitted into evidence as Prosecution Exhibit 6 clearly showed an unresponsive A.B. lying face down on the appellant's bed. A.B. did not move despite the appellant removing her shorts, removing his clothes and licking, touching and putting his fingers into her rectum. The video clearly shows the appellant attempting to commit anal sodomy with A.B. by placing lubricant on his penis and her anus and then straddling her and guiding his penis into her anus. The video then displays him thrusting his pelvic area until A.B. awakens and cries out in clear pain and discomfort. At that point, the appellant rolls A.B. over onto her back and engages in vaginal intercourse with her. At trial, a forensic toxicologist estimated that based on A.B.'s alcohol consumption, age, sex, height and weight, her BAC that night was between .07 and .27.

3

While deliberating on sentence, the members asked the following question: "What type of treatment/rehabilitation services are available (if any) for a combat veteran seperated [sic] from service with a punative [sic] discharge?" Appellate Exhibit XLIV. The military judge called an Article 39(a) session to discuss his response with counsel and presented them with his proposed response. Both parties indicated that they had no objection to the military judge's proposed instruction. Record at 510. The military judge then instructed the members that "a punitive discharge deprives one of substantially all benefits administered by the Department of Veterans Affairs. A combat veteran may nonetheless, however, petition the Department of Veterans Affairs for rehabilitative services. He is not, per se, entitled to the services." Id. at 510-11.

**Legal and Factual Sufficiency for Forcible Sodomy**

This court reviews claims of legal and factual insufficiency *de novo*, examining all the evidence properly admitted at trial. Art. 66(c), UCMJ; *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007). The test for legal sufficiency is whether, considering the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the contested crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *United States v. Quintanilla*, 56 M.J. 37, 82 (C.A.A.F. 2001); *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325.

Within the context of this case, the Government was required to prove beyond a reasonable doubt that the appellant engaged in unnatural carnal copulation with A.B. by penetrating her anus with his penis, and that the act was done by force and without the consent of A.B. Penetration however slight is sufficient to complete the offense. MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2012 ed.), Part IV, ¶ 51a(a). Both force and lack of consent are necessary for this offense. In situations where a victim is incapacitated, the amount of force necessary to achieve penetration is sufficient. *Quintanilla,* 56 M.J. at 82; *United States v. Traylor*, 40 M.J. 248, 250 n.* (C.M.A. 1994) (Wiss, J., concurring in the result). Similarly, if A.B. was incapable of consenting due to lack of mental or physical faculties, then the act was done by force and without consent.

4

*See, e.g., United States v. Roumer*, 2012 CCA LEXIS 27, unpublished op. (N.M.Ct.Crim.App. 31 Jan 2012) (finding forcible sodomy conviction legally and factually sufficient where act committed while victim was "passed out" due to alcohol intoxication), *rev. denied*, 71 M.J. 323 (C.A.A.F. 2012).

This case presents us with both direct and circumstantial evidence of penetration. Prosecution Exhibit 6, the video recording of A.B., displays her unresponsive until she awakes and cries out in pain, coupled with her testimony of waking up to a sharp stabbing pain in her rectum, provide strong circumstantial evidence that the appellant achieved the minimal amount of penetration required to satisfy that element. Additionally, PE 6 showing A.B.'s motionless and unresponsive body establishes beyond a reasonable doubt that any belief by appellant that A.B. consented to the act of sodomy was far from honest and reasonable.

Considering the record before us, we are convinced of the appellant's guilt beyond a reasonable doubt and that any rational trier of fact could have found the elements of the contested crimes beyond a reasonable doubt. We therefore find that the evidence is factually and legally sufficient to sustain his conviction for forcible sodomy.

## Military Judge's Instruction on Collateral Consequences of a Punitive Discharge

Absent objection at trial, we review the military judge's decision to give an instruction for plain error. *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011). To establish plain error, the appellant must show that (1) the trial judge committed error; (2) the error was plain or obvious; and, (3) the error materially prejudiced a substantial right of the appellant. *Id.* (citation and footnote omitted). "[T]he military judge's instructions to members must be adequate to allow the court 'intelligently to determine a punishment appropriate to the accused before it.'" *United States v. Perkinson*, 16 M.J. 400, 401 (C.M.A. 1983) (quoting *United States v. Turner*, 34 C.M.R. 215, 217 (C.M.A. 1964)).

Citing 38 C.F.R. § 3.12(c)(2), the appellant argues that the military judge plainly erred in his instruction since a punitive discharge at a general court-martial statutorily bars any VA benefits. *See also* 38 U.S.C. § 5303.

5

Assuming without deciding that the military judge's instruction that "a combat veteran may nonetheless, however, petition the Department of Veterans Affairs for rehabilitative services" was plain and obvious error, we find no material prejudice. The appellant argues that his sentencing case rested almost entirely upon his struggles with PTSD and that the military judge's error prevented the members from accurately weighing the impact of their sentence. The appellant has failed to demonstrate that this error resulted in, or even contributed to, the bad-conduct discharge he received. Even had the military judge properly instructed the panel that a punitive discharge at a general court-martial is a statutory bar to any VA benefits, we find no reasonable probability that the panel would have refrained from adjudging a punitive discharge given the seriousness and gravity of the offenses to which he was convicted.

To the contrary, the question asked by the members demonstrates that the panel did consider his struggle with PTSD and despite that, still agreed to award him a punitive discharge even though they knew he would not necessarily be eligible for any rehabilitative services. The members convicted the appellant of forcible sodomy and three specifications of committing indecent acts. The maximum sentence he faced was confinement for life without the possibility of parole, reduction in rank to E-1, total forfeitures and a dishonorable discharge. Considering that the trial counsel asked for confinement for between 15 and 20 years and a dishonorable discharge, and the members adjudged confinement that was considerably less – 24 months – and the punitive discharge awarded was a bad-conduct rather than a dishonorable discharge, we find that the members gave the appellant the personalized and individualized consideration as to his sentence.

### Reasonable Expectation of Privacy

The statutory offense of Indecent Act under Article 120k, UCMJ, applicable to appellant's offenses committed during the period 1 October 2007 through 27 June 2012, was replaced in large part by Article 120c, UCMJ, applicable to the offenses committed after 27 June 2012. *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), App. 23 at A23-16. The offense under Article 120(k) states that any person subject to this chapter who engages in indecent conduct is guilty of an indecent act and shall be punished as a court-martial may direct. Article 120(t)(12) defined indecent conduct as

6

that form of immorality relating to sexual impurity that is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations. Indecent conduct includes observing, or making a videotape, photograph, motion picture, print, negative, slide, or other mechanically, electronically, or chemically reproduced visual material, without another person's consent, and contrary to that other person's reasonable expectation of privacy, of (A) that other person's genitalia, anus, or buttocks, or (if that other person is female) that person's areola or nipple; or (B) that other person while that other person is engaged in a sexual act, sodomy (under section 925 (article 125) of this chapter), or sexual contact.

MCM (2007 ed.), Part IV, ¶ 45a(t)(12).

For acts committed after 27 June 2012, Article 120c(a)(2), UCMJ, prohibits a visual recording if, without legal justification or lawful authorization, one knowingly photographs, videotapes, films, or records by any means the private area of another person, without that other person's consent and under circumstances in which that other person has a reasonable expectation of privacy. MCM (2012 ed.), Part IV, ¶ 45c(a)(2). "Private area" is defined as the naked or underwear-clad genitalia, anus, buttocks, or female areola or nipple. Art. 120c(c)(2); MCM (2012 ed.), Part IV, ¶ 45c(c)(2). Article 120c further defines the term "under circumstances in which that other person has a reasonable expectation of privacy," as (A) circumstances in which a reasonable person would believe that he or she could disrobe in privacy, without being concerned that an image of a private area of the person was being captured; or (B) circumstances in which a reasonable person would believe that a private area of the person would not be visible to the public. Art. 120c(c)(3)(A) and (B); MCM (2012 ed.), Part IV, ¶ 45c(c)(3)(A) and (B). By enacting this provision of the UCMJ, Congress recognized an expectation of privacy in a person's body consistent with what has historically been recognized through widely accepted social norms.

In this case, although all four female victims may have consented to sexual acts with the appellant, they all testified that they were completely unaware that their sexual activities with the appellant were being recorded and did not consent to their naked bodies or their participation in sexual acts being

7

recorded.  All four women indicated that, upon learning of the recording, they felt violated, embarrassed and ashamed.  Some even experienced emotional trauma as a result.

The appellant suggests that these women had no reasonable expectation of privacy because they should have noticed the camera and, that by agreeing to have sex with him, they implicitly agreed to the recording.  We find both suggestions patently ridiculous; agreeing to have sex with another does not remove all reasonable expectations of privacy.  Accordingly, we find this assignment of error without merit.

## Conclusion

The findings and the sentence as approved by the CA are affirmed.

Senior Judge WARD and Judge KING concur.

For the Court



R.H. TROIDL
Clerk of Court

8