# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

## No. 201600056

————————————

### UNITED STATES OF AMERICA
*Appellee*

v.

### CODY L. BANNISTER
Hospitalman (E-3), U.S. Navy
*Appellant*

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Keith A. Parrella, USMC.
For Appellant: Commander Brian L. Mizer, JAGC, USN.
For Appellee: Captain Sean M. Monks, USMC; Lieutenant George R. Lewis, JAGC, USN.

————————————

Decided 12 September 2018

————————————

Before HUTCHISON, TANG, and HINES, *Appellate Military Judges*

————————————

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

————————————

HUTCHISON, Senior Judge:

A panel of officer and enlisted members sitting as a special court-martial convicted the appellant, contrary to his pleas, of one specification of violating a lawful general order, two specifications of abusive sexual contact, and one specification of assault consummated by a battery in violation of Articles 92, 120, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 920, and 928 (2012). The members sentenced the appellant to 45 days' restriction and a bad-conduct discharge. The convening authority (CA) approved the findings and the bad-conduct discharge, but disapproved the 45

days' restriction. In a previous opinion, we set aside the CA's action after finding post-trial processing error. *See United States v. Bannister*, No. 201600056, 2016 CCA LEXIS 686 (N-M. Ct. Crim. App. 30 Nov 2016) (unpub. op.). Following our remand, the CA once again approved the findings and only the bad-conduct discharge.

The appellant raises four assignments of error: (1) the evidence was factually insufficient to prove he committed abusive sexual contact; (2) a bad-conduct discharge was an inappropriately severe sentence; (3) the military judge erred in failing to instruct the members on their power to recommend clemency after the members asked about alternatives to a bad-conduct discharge; and (4) the Staff Judge Advocate erroneously advised the CA that he could approve the sentence as adjudged and incorrectly served disqualified counsel with the CA's action.

After careful consideration of the record of trial and the parties' pleadings, we conclude the findings and sentence are correct in law and fact, and that no error materially prejudiced the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## I. BACKGROUND

All the charges in this case stem from the appellant's interactions with Hospitalman Recruit EC while they were both students at Hospital Corpsman "A" School in Fort Sam Houston, Texas. The government's case-in-chief consisted of EC's testimony and a sworn statement the appellant made to a Naval Criminal Investigative Service (NCIS) Special Agent.

EC testified that she met the appellant at the beginning of April 2014 through a mutual friend. The appellant asked EC out on a date and she declined. EC noticed a change in the way the appellant treated her after she declined his invitation. She testified that the appellant began calling her names like "slut" and "whore," but soon his behavior escalated to inappropriate touching.[1]

The first inappropriate touching occurred in late April 2014. While EC was walking back to her barracks room from a student center, the appellant came up behind EC and grabbed her right breast. EC told the appellant to stop, but "he just gave a little . . . smirk . . . and then walked away."[2] EC testified that a similar incident occurred in early June 2014, while she was walking on base with two of her friends. Her friends saw the appellant approaching, told EC the appellant wanted to talk to her, and the two friends walked away. EC testified that she tried to ignore the appellant, at which

---

[1] Record at 98.

[2] *Id.*

point "he smacked [her] butt."[3] EC further explained that the appellant did not just hit her quickly, but rather he grabbed her buttocks and held his hand there for a "long time."[4] EC told the appellant that his actions were not funny and to stop, but the appellant simply smirked. In his statement to NCIS the appellant confirmed that on one occasion he did come up behind EC and grab her in a "friendly manner" and "may have grabbed her breast" but if he did, "it was accidental."[5] He also acknowledged that there may have been other times when he came up behind her and grabbed or touched her. The appellant explained that he "was raised in a loving affectionate house and greetings like that [were] normal to [him]."[6]

Next, EC testified that over Memorial Day weekend, she and some friends stopped by the smoke pit on their way back to the barracks after a day of liberty at a nearby river. EC saw the appellant and another student at the smoke pit and went over to talk to them while her friends walked over to the nearby dumpsters to discard trash from their trip. As she approached the smoke pit, the appellant "slapped [EC's] butt" and cupped both of her breasts with his hands.[7] When EC confronted the appellant and asked him why he was touching her, the appellant laughed and told EC that it was funny. The appellant admitted to NCIS that he encountered EC and others near the "garbage dump, trash area" where he "hit her butt[,]" and that he might have grabbed her breast.[8] He acknowledged that he "may have taken the joke too far" but thought they were just "playing around."[9]

The next incident occurred in the schoolhouse's computer lab. EC testified that the appellant sat down next to her while she was studying. When she told him she did not want to talk, the appellant put his hand on her thigh and moved it towards her pelvic region. EC told the appellant to "knock it off" and shifted in her seat to avoid the appellant.[10] The appellant then got up to leave, but as he did, he walked behind EC's chair, reached around her, and "flicked [her] breast."[11] The appellant conceded to NCIS that he may have put

---

[3] *Id.* at 103.

[4] *Id.*

[5] Prosecution Exhibit (PE) 2 at 1.

[6] *Id.*

[7] Record at 101.

[8] PE 2 at 2.

[9] *Id.*

[10] Record at 106.

[11] *Id.* at 107.

his hand on her leg to get her attention so he could talk to her, but denied that he was rubbing her leg "to sexually assault her."[12]

Finally, EC testified that the appellant again grabbed her breast while she was standing in an on-base café speaking with a classmate. She claimed the appellant folded his arms, tucking his right hand under his left, and then standing next to EC—"only about four to six inches away"—surreptitiously reached out and touched her breast.[13] The appellant told NCIS that he remembered encountering EC at the café and attempting to "flick her arm" with his fingers to get her attention and that he might have hit her breast if she "turned the wrong way."[14]

In his defense, the appellant called four witnesses who each testified that they never saw the appellant touch EC, despite being nearby on the various occasions alleged by EC.

The members convicted the appellant of one specification of abusive sexual contact for touching EC's breasts on divers occasions, one specification of abusive sexual contact for touching EC's buttocks on divers occasions, one specification of assault consummated by battery for touching EC's leg, and one specification of violating the Secretary of the Navy's Sexual Harassment policy.[15]

## II. DISCUSSION

### A. Factual sufficiency

The appellant contends that his convictions for abusive sexual contact are factually insufficient because we cannot be convinced beyond a reasonable doubt that he intended to abuse, humiliate, or degrade EC. Rather, the appellant argues that the public nature of his conduct, and the failure of eyewitnesses to recall the events, much less to intervene, all reflect the appellant's belief that he was engaged in "teenage horseplay" between "mutually consenting participants[.]"[16]

We review questions of factual sufficiency *de novo*. Art 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is whether "after weighing the evidence in the record of trial and

---

[12] PE 2 at 2.

[13] Record at 109.

[14] PE 2 at 2.

[15] Secretary of the Navy Instruction 5300.26D, "Department of the Navy (DON) Policy on Sexual Harassment" (3 Jan 2006).

[16] Appellant's Brief of 23 Aug 17 at 13.

making allowances for not having personally observed the witnesses, [this court is] convinced of appellant's guilt beyond a reasonable doubt." *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (citation, internal quotation marks, and emphasis omitted). In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. Proof beyond a reasonable doubt does not mean, however, that the evidence must be free from conflict. *United States v. Goode*, 54 M.J. 836, 841 (N-M. Ct. Crim. App. 2001).

Although the appellant does not challenge the legal sufficiency of the abusive sexual contact convictions, we are mindful that Article 66(c), UCMJ, requires this court "to conduct a *de novo* review of [both the] legal and factual sufficiency of the case." *Washington*, 57 M.J. at 399 (citation omitted). "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297-98, (C.A.A.F. 2018) (quoting *Rosario*, 76 M.J. at 117).

To sustain the appellant's convictions for abusive sexual contact, we must be convinced beyond reasonable doubt that: (1) the appellant committed sexual contact upon EC; and (2) that he did so by causing bodily harm to EC.[17] Sexual contact is defined in pertinent part, as "touching . . . either directly or through the clothing . . . the . . . breast . . . or buttocks of any person, with an intent to abuse, humiliate, or degrade any person; or . . . touching . . . any body part of any person, if done with an intent to arouse or gratify the sexual desire of any person." MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2012 ed.), Part IV, ¶ 45.a.(g)(2). Bodily harm is defined as "any offensive touching of another, however slight, including any . . . nonconsensual sexual contact." *Id.* at Part IV, ¶ 45.a.(g)(3). Since the bodily harm alleged in each of the appellant's abusive sexual contact specifications is the charged sexual contact, we must also be convinced beyond reasonable doubt that EC did not consent to the appellant's touching her buttocks and breasts.

---

[17] *See* Article 120(d), UCMJ ("Any person subject to this chapter who commits or causes sexual contact upon or by another person, if to do so would violate subsection (b) (sexual assault) had the sexual contact been a sexual act, is guilty of abusive sexual contact[.]"). Since the appellant's convictions for abusive sexual contact each alleged a "bodily harm" theory of liability, we incorporate the elements of Article 120(b)(1)(B), UCMJ.

5

The appellant admitted in his sworn statement to NCIS that he touched EC's buttocks and may have also touched her breasts. EC testified credibly that that the appellant not only slapped and grabbed her buttocks, but also grabbed, cupped, and flicked her breasts, often doing so covertly so that others nearby could not see or would not notice. Regardless, on appeal, the appellant does not now challenge the acts underlying the abusive sexual contact specifications, but argues that the evidence is insufficient to prove that he had the requisite criminal intent—to abuse, humiliate, or degrade. Alternatively, he argues that the evidence is insufficient to prove that EC did not consent to his touching. We disagree.

First, the appellant's intent may be proven by circumstantial evidence. *United States v. Kearns*, 73 M.J. 177, 182 (C.A.A.F. 2014); *United States v. Vela*, 71 M.J. 283, 286 (C.A.A.F. 2012). Here, the appellant repeatedly touched EC's breasts and buttocks—often times surreptitiously in public—despite her demands that he stop and after she told him she did not find his actions funny. This conduct evinces the appellant's intent to harass, embarrass, and humiliate EC. That the appellant touched EC on her breasts and buttocks—not her head, her arms, or any other non-erogenous zone—is strong circumstantial evidence of his intent to abuse, humiliate, or degrade her, especially with each subsequent contact after her initial objection.

Second, as we noted above, the definition of sexual contact includes not only touching certain body parts with the intent to abuse, humiliate or degrade, but also touching any part of the body with the intent to arouse or gratify sexual desires of any person. The appellant's repeated touching of EC's buttocks and breasts only *after* she declined his invitation to go on a date with him is also strong circumstantial evidence of sexual intent.

Finally, we reject the appellant's assertion that EC consented to him touching her breasts and buttocks and that he honestly and reasonably believed that she did consent. EC testified compellingly that she repeatedly told the appellant to stop and resisted his advances. Indeed, the appellant's admission that EC was merely an acquaintance, "not a good friend," and the stealthy manner in which he touched her belie any notion that EC consented or that the appellant had any *reasonable* belief that she did.[18]

Consequently, after carefully reviewing the record of trial and considering all of the evidence in a light most favorable to the prosecution, we are convinced that a reasonable factfinder could have found the appellant touched EC's breast and buttocks on divers occasions with the intent to abuse, humiliate or degrade EC, or to arouse or gratify his or her sexual desire. Furthermore, after weighing all the evidence in the record and making allowances for

---

[18] PE 2 at 2.

not having personally observed the witnesses, we too are convinced beyond a reasonable doubt of the appellant's guilt.

## B. Sentence appropriateness

The appellant next avers that a bad-conduct discharge is an inappropriately severe sentence for his crimes. We disagree.

We review sentence appropriateness *de novo. United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires our "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted). In making this assessment, we analyze the record as a whole. *Healy*, 26 M.J. at 395-97. Despite our significant discretion in determining sentence appropriateness, we may not engage in acts of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

The appellant was convicted of two specifications of abusive sexual contact for repeatedly touching EC's breasts and buttocks, one specification of assault consummated by battery for touching her leg, and one specification of violating the Secretary of Navy instruction prohibiting sexual harassment. Based on these offenses, the appellant faced the special court-martial jurisdictional maximum punishment of confinement for 12 months, reduction to the paygrade of E-1, forfeiture of two-thirds pay per month for 12 months, and a bad-conduct discharge. The appellant's approved sentence included only the bad-conduct discharge.

Having given individualized consideration to the nature and seriousness of these crimes, the appellant's short record of service, and all matters contained in the record of trial, including matters submitted by the appellant in extenuation and mitigation, and the victim's testimony during sentencing, we conclude the sentence as approved by the CA is not inappropriately severe and is appropriate for this offender and his offenses. *United States v. Baier*, 60 M.J. 382, 384-85 (C.A.A.F. 2005); *Healy*, 26 M.J. at 395-96; *Snelling*, 14 M.J. at 268. Granting sentence relief at this point would be to engage in clemency, which we decline to do. *Healy*, 26 M.J. at 395-96.

## C. Instructions

Citing *United States v. Keith*, 46 C.M.R. 59 (C.M.A. 1972), the appellant contends that following a question from the members while they were deliberating on a sentence, the military judge erred in failing to instruct the members that, in addition to awarding a sentence, they could recommend clemency to the CA. Specifically, the members asked "Do we have an alter-

nate option of [administrative separation] or [Other than Honorable] besides the BCD listed?"[19] The following colloquy occurred between the military judge and the parties:

> MJ: What's the parties' positions on this . . . question?
>
> TC: "No" seems to be the best answer, sir.
>
> DC: Yes, sir. Now I'm thinking, I've given administrative separation.
>
> MJ: All right.[20]

The military judge recalled the members, and instructed them simply that, "The answer is no."[21] The trial defense counsel did not object.

Since no objection was made to the instructions given to panel members, we review the military judge's instructions for plain error. RULE FOR COURTS-MARTIAL (R.C.M.) 1005(f), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.); *United States v. Griffin*, 25 M.J. 423, 425 (C.M.A. 1988). Under plain error review, relief is granted only when "(1) there was error, (2) the error was plain and obvious, and (3) the error materially prejudiced a substantial right of the accused." *United States v. Garner*, 71 M.J. 430, 434 (C.A.A.F. 2013) (citation omitted).

"[T]he military judge's instructions to members must be adequate to allow the court 'intelligently to determine a punishment appropriate to the accused before it.'" *United States v. Perkinson,* 16 M.J. 400, 401 (C.M.A. 1983) (quoting *United States v. Turner*, 34 C.M.R. 215, 217 (C.M.A. 1964)). To that end, "in a proper case it is error for the military judge to fail to disclose to the court members their right to recommend clemency." *Id.* (quoting *Keith*, 46 C.M.R. at 63). However, a military judge need not provide a clemency instruction when the facts of a case "do not sufficiently raise the possibility that the members intended to recommend clemency." *Id.* In *Keith*, the members had numerous questions related to that appellant's discharge. The members consolidated those questions and asked, "If the court does not award a bad conduct discharge who will determine what type of discharge he gets at some later date and what observations are available?" *Id.* at 61. The military judge instructed the members that they could not "adjudge or recommend or consider the possibility of any type administrative discharge" and that if they "decide[d] to adjudge any discharge in [the] court-martial it [could] only be a bad conduct discharge." *Id.* In an Article 39(a), UCMJ, session prior to in-

---

[19] Record at 348; Appellate Exhibit XXIII.

[20] Record at 348.

[21] *Id.* at 350.

8

structing the members, the military judge declined to give an instruction on clemency. The Court of Military Appeals (CMA) recognized that this was "not an ordinary case" and concluded that the military judge "erred in failing to inform the court of the conditions under which they could . . . recommend an administrative discharge, disapproval of the adjudged punitive discharge or suspension of the latter" after permitting counsel to discuss administrative discharges at length during their arguments on sentencing. *Id.* at 64.

The appellant argues that his case is similar to *Keith*. However, as the CMA recognized, *Keith* was not the ordinary case. More recently, in *Perkinson*, our superior court clarified that the propriety of a clemency instruction must be determined on a case by case basis. In *Perkinson,* the military judge declined to provide a clemency instruction after the members returned the sentencing worksheet with the words "bad conduct discharge" stricken and the words "general discharge as unsuitable for military service" replacing them. *Perkinson*, 16 M.J. at 401-02. The CMA concluded that the "mere attempt to award a general discharge, standing alone, was insufficient to signal an intention on the part of the members to recommend clemency" and consequently, the military judge did not err in declining to provide the instruction. *Id.* at 402.

In *United States v. Epps*, No. 201300423, 2014 CCA LEXIS 517 at *5 (N-M. Ct. Crim. App. 29 Jul 2014) (unpub. op.), the members asked whether Airman Epps would go to an administrative separation board if they did not award a punitive discharge. Without objection from the trial defense counsel, the military judge did not provide the clemency instruction. Applying *Perkinson*, we concluded that the members' single question about what might happen should they not award a punitive discharge, "did not trigger a requirement to give the clemency instruction." *Id.* at *6. The appellant's case is similar. Here, the members simply asked whether there was an "alternate option."[22] After being told, "no" the members indicated that their questions were answered.[23] Like *Epps,* here the members' single question about their discharge options did not trigger a *sua sponte* requirement for the military judge to instruct the members about recommending clemency. To be sure, the members' question here was far less indicative of a desire on their part to recommend clemency than were the actions of the *Perkinson* members, who went so far as trying to award an administrative discharge by writing it into the sentencing worksheet. Yet, our superior court concluded such action "did not sufficiently raise the possibility that the members intended to recommend clemency." *Perkinson*, 16 M.J. at 401. Because the appellant fails to show

---

[22] Record at 348.

[23] *Id.* at 350.

that the members intended to recommend clemency, we find no plain or obvious error in the military judge's failure to provide the members with a clemency instruction.

## D. Post-trial

Finally, the appellant argues that the CA's Staff Judge Advocate provided erroneous post-trial advice when she recommended that the CA approve the sentence as adjudged, despite the fact that the CA had disapproved the 45 days' restriction in her prior action. The appellant contends this error prejudiced him because the CA "took the unusual step of meeting with trial defense counsel to discuss clemency, and he may have erroneously believed disapproving restriction was some measure of clemency."[24] The appellant further argues that he could have addressed this error directly with the CA, but his counsel was never served with the CA's action.

Where there is error in post-trial processing and "some colorable showing of possible prejudice" thereby, this court must either provide meaningful relief or remand for new post-trial processing. *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998) (citation omitted); s*ee also United States v. Wilson*, 54 M.J. 57, 59 (C.A.A.F. 2000).

Even assuming that the Staff Judge Advocate's advice was error, we find no prejudice. First, the CA once again disapproved the 45 days' restriction. Second, the appellant's claim of prejudice is purely speculative, and he provides no evidence that the CA actually thought disapproving the restriction amounted to clemency. Rather, such an assertion is betrayed by the record: the appellant submitted clemency matters and met with the CA—asking that he order a new trial or disapprove the bad-conduct discharge—*after* having already received the Staff Judge Advocate's Recommendation containing the putative error. Having found no colorable showing of possible prejudice, we conclude the appellant's assignment of error is without merit.

### III. CONCLUSION

The findings and sentence as approved by the CA are affirmed.

Judge TANG and Judge HINES concur.

For the Court

RODGER A. DREW, JR.
Clerk of Court

---

[24] Appellant's Brief at 22.